UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERIPRISE FINANCIAL      )
SERVICES, INC.,           )
                          )
            Petitioner,   )   CIVIL ACTION NO.
                          )   18-10337-DPW
v.                        )
                          )
CHERYLE ANNE BRADY        )
                          )
            Respondent.   )


MEMORANDUM AND ORDER
September 11, 2018

Petitioner, Ameriprise Financial Services, Inc., ("Ameriprise"), has timely filed this action seeking to vacate an arbitration award in favor of Respondent, Cheryle Anne Brady. For the reasons stated below, I grant the petition only in part, vacating so much of the award as purports to assess attorney fees against Ameriprise, but otherwise confirming the award.

## I. BACKGROUND

### A.   *The Parties*

Ameriprise is a national broker-dealer providing wealth management, securities trading, and investment banking services. It is a member of the Financial Industry Regulatory Authority ("FINRA").

Brady has been a Registered Associate with FINRA or its predecessors at several broker-dealers since 1993. She worked

for Ameriprise from January 2012 until her September 2016

termination as a result of unauthorized trades in June 2016.

**B.    *Unauthorized Trading Incident***

As Brady tells it, on June 20, 2016 her sales assistant,

Brian Noyes, went rogue and engaged in several securities trades

for clients without consulting those clients, as their account

terms required.  Brady contends she learned of the trades

shortly after they were entered, questioned Noyes about the

trades, and instructed him to "fix this".  For its part,

Ameriprise concluded after an internal investigation, and

continues to maintain, that Brady directed Noyes to engage in

the unauthorized trades.

In October 2017, at the close of FINRA's investigation,

Brady signed a FINRA Letter of Acceptance, Waiver, and Consent

(AWC) conceding that she lied to Ameriprise's Compliance

Department ("Compliance") during its investigation of the

trades.  In response to a June 23, 2016 email inquiry from

Compliance about the trades, Brady stated that she had talked to

the clients on the day of each trade and told Noyes to make the

trades.  While she maintained this story on a second call with

Compliance, she later told her assistant manager that in fact

Noyes had entered the trades without her foreknowledge.

Misrepresentations are understood to constitute a violation of

FINRA Rule 2010, which provides that "[a] member, in the conduct

of its business, shall observe high standards of commercial
honor and just and equitable principles of trade." In Brady's
AWC, she conceded she violated FINRA Rule 2010 by making the
misrepresentations to Compliance.

On or about September 7, 2016, Ameriprise terminated
Brady's employment and later filed a U5 termination form with
FINRA stating the reason for Brady's termination was: "The
advisor was terminated on September 7, 2016 for policy
violations including unauthorized trading and use of discretion
in non-discretionary accounts."

## C.   *The Arbitration*

### 1.   Agreement to Arbitrate

At the commencement of her employment with Ameriprise,
Brady signed a Financial Advisor Agreement.  In Part 12 of that
agreement, she agreed, in relevant part, to "arbitrate any
dispute, claim, or controversy that [might] arise between [her]
and the Company or a customer or any other person ["Claims"],
unless otherwise agreed to in writing by the parties."  That
agreement also stated that Brady "and [Ameriprise] shall each be
responsible for their own costs of legal representation, if any
except where such costs of legal representation may be awarded
as a statutory remedy by the arbitrator."

Additionally, Brady took out loans from Ameriprise.  The
following clause is included in the notes for each loan:

> The undersigned Employee hereby . . . agrees to pay
> all costs in collection, whether or not suit of action
> is filed hereon, in the event that payment is not made
> in accordance with the provisions of this Promissory
> Note.  The costs of collection shall include but are
> not limited to reasonable attorney's fees for
> collection efforts which before commencing any legal
> proceeding, in arbitration, at trial, and on appeal.

On or about October 26, 2016, Brady filed a statement of

claim in FINRA Dispute Resolution ("FINA DR") for defamation,

wrongful termination, breach of contract, tortious interference,

and failure to supervise against Ameriprise and Noyes in

connection with her termination.  On or about November 17, 2016,

Ameriprise filed a statement of claim in FINRA DR for breach of

the promissory note agreement related to loans Brady had taken

out from the company.

In late 2016, after filing their respective statements of

claim, the Parties signed the FINRA Arbitration Submission

Agreements for each claim.  The Submission Agreement for

Ameriprise's claim stated, in part: "The party further agrees to

abide by and perform any award(s) rendered pursuant to this

Submission Agreement.  The party further agrees that a judgment

and any interest due thereon, may be entered upon such award(s)

and, for these purposes, the party hereby voluntarily consents

to submit to the jurisdiction of any court of competent

jurisdiction which may properly enter such judgment."  The

Submission Agreement for Brady's claim against Ameriprise and

4

Noyes was the same, but addressed to "parties," rather than "party."

##  2.   Selection of Arbitration Panel

The Parties received Arbitrator Disclosure Reports from FINRA regarding possible arbitrators to fill the Arbitration Panel ("Panel) of three that would preside over their dispute. FINRA sent three lists of ten potential arbitrators.  The Parties could peremptorily strike up to four arbitrators from each list of ten FINRA offered, permanently removing those arbitrators from consideration.

Just one disclosure report is relevant to the instant action: that of David Summer, who served on the Panel.  Under "Skills in Controversy," Summer listed "Account Related – Breach of Contract, Account Related – Dividends, Executions – Limit/Stop/Market Order, Employment – Breach of Contract, Employment – Discrim. Age, Employment – Employment Discrimination, Employment – Retaliation, Employment – Sexual Harassment."  As to Arbitrator Background, Summer stated:

> From March 2004 to present I have represented clients
> in various courts and before the IRS in audits and
> other tax forums.  From January 2001 to March 2004, I
> worked for PricewaterhouseCoopers in their
> International Tax Department.  From September 1997 to
> January 2001, I worked as a litigator for two Boston
> law firms.

5

Summer listed two law firms, Bologna & Harris and Baker & Associates, at which he was previously employed.

Though the association was not listed on his disclosure form, Summer was also associated with Cutler & Associates, a firm that advertises its plaintiff-side employment work.  In addition, Summer has a litigation practice in employment law.

### 3.   The Arbitration Award

On or about December 26, 2016, Brady filed a Motion to Consolidate her claim, which had been assigned Case Number 16-03134, and Ameriprise's claim, which had been assigned Case Number 16-03368.  In March 2017, the Panel granted the Motion to Consolidate over Ameriprise's opposition.

The Panel issued an award in the consolidated matter bearing a January 23, 2018 date of service.  It awarded compensatory damages to Brady in the sum of $675,000.93, costs of $80,000.00, and attorney fees of $123,712.00 from Ameriprise.

The Panel also recommended that several entries on Brady's Form U5, which Ameriprise had been required to file with FINRA regarding Brady's termination, be changed.  It recommended that the Reason for Termination be changed to "Other" and that the following explanation be added:

> TERMINATION WITHOUT CAUSE.  THERE IS NO CREDIBLE PROOF THAT MS. BRADY AUTHORIZED THE ALLEGED TRADES OR THAT SHE WAS INVOLVED IN THE ALLEGED PRACTICE FOR WHICH SHE WAS

> TERMINATED.   MS. BRADY'S FIRING WAS PRETEXTUAL,[1] AS
> THERE WAS NO HARM TO ANY CUSTOMERS AND NO CUSTOMER
> COMPLAINTS.   THE TRADES WERE ALLOWED TO STAND AND
> BENEFITED AMERIPRISE FINANCIAL SERVICES, INC. AND ITS
> CUSTOMERS.

The Panel further recommended changing the answers to questions 7B and 7F(1) on the form.  Though not submitted in the record before me, Ameriprise represents that Question 7B on Form U5 asked whether Brady was "under internal review for . . . violating investment-related statutes, regulations, rules or industry standards of conduct" at the time of her termination. Ameriprise also represents that Question 7F on Form U5 asked whether Brady was terminated after allegations were made that she violated "investment-related statutes, regulations, rules or industry standards of conduct."  The Panel recommended that the answers to these questions be changed from "Yes" to "No" based on the "defamatory nature of the information."  Such changes would not, however, be automatic; rather, Brady is obligated to submit the award to FINRA for its review.

Brady's claim against Noyes was denied, as were the claims of Ameriprise against Brady.

### 4.   The Instant Action

On February 21, 2018, Ameriprise filed the petition to

---

[1] The award itself does not explain what the alleged true purpose of the termination was.  Brady argued she was a target of age discrimination.

vacate the arbitration award now before me.

## II. STANDARD OF REVIEW

Judicial review of an arbitral award is "extremely narrow and exceedingly deferential." *Nat'l Cas. Co.* v. *First State Ins. Grp.*, 430 F.3d 492, 496 (1st. Cir. 2005) (quoting *Wheelabrator Envirotech Operating Servs., Inc.* v. *Mass. Laborers Dist. Council Local 1144*, 88 F.3d 40, 43 (1st Cir. 1996)). This form of judicial review is "among the narrowest known in the law." *Ramos-Santiago* v. *United Parcel Serv.*, 524 F.3d 120, 123 (1st Cir. 2008) (quoting *Me. Cent. R.R. Co.* v. *Bhd. Of Maint. Of Way Employees*, 873 F.2d 425, 428 (1st Cir. 1989)). That a reviewing court is convinced an arbitrator committed legal or factual error in his decision is not itself sufficient to justify setting aside an arbitral award. *See UMass Mem'l Med. Ctr., Inc.* v. *United Food & Commercial Workers Union, Local 1445*, 527 F.3d 1, 5 (1st Cir. 2008). This stringent standard ensures "arbitration's essential virtue of resolving disputes straight away" is maintained and avoids costly "full-bore legal and evidentiary appeals. . . ." *Hall St. Assocs., L.L.C.* v. *Mattel, Inc.*, 552 U.S. 576, 588 (2008).

There are, however, limits to the deference courts accord arbitrators, *see E. Seaboard Constr. Co.* v. *Gray Constr., Inc.*, 553 F.3d 1, 3-4 (1st Cir. 2008) (citing *Kashner Davidson Secs. Corp.* v. *Mscisz,* 531 F.3d 68, 70 (1st Cir. 2008)), with courts

vacating decisions "only in very unusual circumstances." *First
Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 942 (1995).
A court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or
> undue means;
> (2) where there was evident partiality or corruption in the
> arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in
> refusing to postpone the hearing, upon sufficient cause
> shown, or in refusing to hear evidence pertinent and
> material to the controversy; or of any other misbehavior by
> which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so
> imperfectly executed them that a mutual, final, and
> definite award upon the subject matter submitted was not
> made.

9 U.S.C. § 10(a)(1)-(4).

### III. DISCUSSION

Ameriprise advances all four of the statutory grounds to
vacate the Award: (1) evident partiality by a member of the
Panel in violation of 9 U.S.C. § 10(a)(2), (2) misconduct by
refusal to hear evidence in violation of 9 U.S.C. § 10(a)(3),
(3) manifest disregard for the law or exceeding power under 9
U.S.C. § 10(a)(4) by awarding attorney fees, and (4) procurement
of the award by fraud in violation of 9 U.S.C. § 10(a)(1).  I
address these grounds in turn.

1.   Evident Partiality in Violation of 9 U.S.C. § 10(a)(2)

Ameriprise first argues that the arbitration award should
be overturned because of the evident partiality of one of the
three arbitrators on the Panel, David Summer.  It claims that

9

Summer did not disclose his affiliation with a law firm that does plaintiff-side labor work or his own employment practice, which it claims was active during the arbitration.  Because it says it learned of Summer's employment work after the award, Ameriprise claims it was denied a fair opportunity to strike him on the basis of his "clear bias and predisposition in favor of employees in wage and compensation disputes."

For these purposes, "[e]vident partiality is more than just the appearance of possible bias.  Rather, evident partiality means a situation in which 'a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration.'"  *JCI Communs., Inc.* v. *IBEW, Local 103*, 324 F.3d 42, 51 (1st Cir. 2003) (quoting *Nationwide Mut. Ins. Co.* v. *Home Ins. Co.*, 278 F.3d 621, 626 (6th Cir.2002)).  A party seeking to set aside an award on the basis of evident partiality "must show that the alleged partiality is or was 'direct, definite, and capable of demonstration rather than remote, uncertain or speculative.'"  *United Steel Workers of Am., Local 12003* v. *Keyspan Energy Delivery*, No. CIV.A. 08-11928-GAO, 2009 WL 2422865, at *2 (D. Mass. Aug. 3, 2009)(quoting *Kiewit/Atkinson/Kenny* v. *In't Bhd. of Elec. Workers, Local 103*, 76 F. Supp. 2d 77, 79 (D. Mass. 1999)).  Absent exceptional circumstances, a court "will not entertain a claim of personal bias where it could have been raised at the arbitration

proceedings but was not." *JCI Communs.* at 51 (quoting *Fort Hill Builders, Inc.* v. *Nat'l Grange Mut. Ins. Co.*, 866 F.2d 11, 13 (1st Cir. 1989) (per curiam)).

Ameriprise has failed to demonstrate bias constituting evident partiality.  It alleges no facts that show that Summer would be biased in favor of Brady with respect to this controversy.  Rather, it relies on general allegations about his area of expertise and practice.  The case law that Ameriprise attempts to marshal to support its claim calls for a more personal connection than Ameriprise has offered here.

In *Commonwealth Coatings Corp.* v. *Continental Casualty Co.*, 393 U.S. 145 (1968), where the Supreme Court established "the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias," an undisclosed business relationship between one arbitrator and a party was at issue.  *See id.* at 148-49.  *Applied Indus. Materials Corp.* v. *Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132 (2d Cir. 2007) relates to an arbitrator's selective disclosure of a substantial business interest in one party.  *Id.* at 139.  In *Freeman* v. *Pittsburgh Glass Works, LLC*, 709 F.3d 240 (3d Cir. 2013), undisclosed campaign contributions to an arbitrator were at issue.  *Id.* at 255.  Ameriprise's reference to *Olson* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 51 F.3d 157 (8th Cir. 1995) is no more persuasive for the same reason.

The arbitrator in *Olson* failed to disclose his employer's "ongoing business relationship" with a party.  *Id.* at 158.

By contrast, the Second Circuit's *STMicroelectronics, N.V.* v. *Credit Suisse Sec. (USA) LLC*, 648 F.3d 68 (2d Cir. 2011) is instructive.  There, Credit Suisse sought vacatur of an arbitration award on grounds that the arbitrator had not disclosed prior expert testimony on a somewhat relevant legal issue.  *Id.* at 77.  The court rejected this argument because there was "no contention [] that [the arbitrator] had any prior knowledge of, or misconception about, the facts of th[e] case." *Id.; see also Scandinavian Reinsurance Co.* v. *Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 64 (2d Cir. 2012) ("We conclude that, under the circumstances of this case, the fact of Dassenko's and Gentile's overlapping service as arbitrators in both the Platinum Arbitration and the St. Paul Arbitration does not, in itself, suggest that they were predisposed to rule in any particular way in the St. Paul Arbitration.  As a result, their failure to disclose that concurrent service is not indicative of evident partiality."). The Second Circuit took the crux of the argument to be that the arbitrator's "testimony suggest[ed] he had pre-existing views about potentially relevant propositions of law."  *STMicroelectronics, N.V.* 648 F.3d at 77. I share the Second Circuit's view that just as a "judge's lack of predisposition regarding the relevant legal issues in a case

has never been thought a necessary component of equal justice," *id.,* it should not be considered with respect to an arbitrator either. *See id.* ("This is all the more true for arbitrators, '[t]he most sought-after' of whom 'are those who are prominent and experienced members of the specific business community in which the dispute to be arbitrated arose.'" (quoting *Int'l Produce, Inc*. v. *A/S Rosshavet*, 638 F.2d 548, 552 (2d Cir.1981)).

Moreover, Ameriprise's claim fails because it could have identified the facts it relies on to suggest bias prior to the arbitration.  As Brady points out, Summer's association with Cutler was discoverable by the most basic method of contemporary "due diligence": a Google search.  Whether or not the disclosure form was as clear about the nature of Summer's employment law work as Ameriprise now demands, the mention of it as one of his specialties certainly should have prompted Ameriprise to inquire further.  Given that simple diligence before the arbitration decision would have surfaced the public information on which Ameriprise seeks to proceed to vacatur, I decline to entertain its post hoc claim of bias.[2]  *See generally Lagstein* v. *Certain*

---

[2] Ameriprise argues the fact that Summer amended his Arbitrator Disclosure Report after it filed its Petition to Vacate is evidence of the materiality of the omitted information.  This prudent post hoc step does not alter my analysis for the reasons Fed. R. Evid. 407 limits proof of subsequent remedial measures.

*Underwriters at Lloyd's*, 607 F.3d 634, 646 (9th Cir. 2010) ("We decline to create a rule that encourages losing parties to challenge arbitration awards on the basis of pre-existing, publicly available background information on the arbitrators that has nothing to do with the parties to the arbitration.").

In light of the broad and speculative nature of Ameriprise's apparent partiality claim and the public nature of the facts that support it, I deny the motion to vacate as to this ground.

2. <u>Arbitrator's Misconduct in Violation of 9 U.S.C.</u>
<u>§ 10(a)(3)</u>

Ameriprise argues that the Panel refused to give weight to the evidence of Brady's FINRA Rule 2010 violation (namely, making misrepresentations to Compliance), which it contends provided an independent basis for Brady's termination, in violation of § 10(a)(3).

Section 10(a)(3) allows a court to vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). The First Circuit has held "that, under section 10(a)(3), 'vacatur is appropriate only when the exclusion of relevant evidence so

14

affects the rights of a party that it may be said that he was deprived of a fair hearing.'" *Nat'l Cas. Co.* v. *First State Ins. Grp.*, 430 F.3d 492, 497 (1st. Cir. 2005) (quoting *Hoteles Condado Beach, La Concha & Convention Center* v. *Union de Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985)).

Ameriprise relies upon *Hoteles Condado Beach*, where the petitioning company sought to vacate an arbitration award that found error in the firing of a worker for exposing himself to a guest. *Id*. at 36.  There, the First Circuit upheld the district court's decision to vacate the award because "evidence effectively excluded by the arbitrator was both 'central and decisive' to the Company's position; therefore, the arbitrator's refusal to consider this evidence as . . . so 'destructive of [the Company's] right to present [its] case, that it warrant[ed] the setting aside of the arbitration award.'" *Id.* at 40 (citation omitted).

There are a number of clear differences between the circumstances in this case and those in *Hoteles Condado Beach*. The evidence at issue in *Hoteles Condado Beach* was the only available evidence.  Ameriprise does not seem to contend that this was the only evidence available to the Panel.  Nor does Ameriprise contend that it was otherwise unable to put on its case.  These differences counsel against a finding that Ameriprise was denied a fair hearing.  *Accord Park Plaza Hotel*

15

v. *Local 217, Hotel & Rest. Worker's & Bartenders Union*, No. CIV. N-89-193 (AHN), 1990 WL 178880, at *13-14 (D. Conn. Aug. 21 1990).

A further fundamental difference is that the *Hoteles Condado Beach* arbitrator explicitly decided to give no weight to the evidence. *Hoteles Condado Beach*, 763 F.2d at 39. Here, Ameriprise seems to claim that the evidence of Brady's violation, though entered in the record and conceded by Brady, must have been effectively excluded given the outcome. However, Ameriprise's conjecture does not necessarily follow. The Panel's Award clearly states they found Brady was terminated without cause given that her "[firing was pretextual]." As a result, even if the FINRA Rule 2010 violation could be considered an independent, justifiable ground for Brady's termination, it was a ground necessarily found to be pretextual by the Panel.

Although the record does not fully reflect the rationales upon which the Panel decided, Ameriprise's argument that the Panel implicitly declined to give weight to evidence asks the Court to speculate why the Panel decided as it did. While there may be some situation where a fair hearing has been demonstrated to have been denied by a decision of an arbitrator that includes an implied finding that is puzzling, that is not the case here. *See Int'l Bhd. of Firemen & Oilers, Local 261* v. *Great N. Paper Co.*, 765 F.2d 295, 296 (1st Cir. 1985) ("[T]hat the arbitrator

made a credibility finding or reached a conclusion different
from that which might have been made by a court, is not ground
for interfering with the award."). The role of the court, on a
petition to vacate, is not to conduct a post-mortem of the
arbitrators' cognition processes and how they reached their
decision; to do so, would be an inappropriate (and impossible)
task.

I decline to stretch *Hoteles Condado Beach* to this
situation. *Accord Interdigital Communs. Corp.* v. *Samsung Elecs.
Co.*, 528 F. Supp. 2d 340, 352 (S.D.N.Y. 2007) ("It is clear that
Samsung's 'refusal to consider' argument essentially seeks
vacatur on the ground that the Panel failed to consider the
Nokia Evidence in the precise manner desired by Samsung.").
Because Ameriprise's objections to the Panel's recommended U5
changes spring from this same quarrel with how the arbitrators
weighed the evidence, those objections also fail.

### 3. Manifest Disregard of Law in Award of Attorney Fees

Ameriprise argues for vacatur on the grounds that the
arbitrators' award of attorney fees was in manifest disregard of
the law. The Uniform Arbitration Act as adopted in
Massachusetts, M.G.L. c. 251, § 10, does not provide for an
award of attorney fees "[u]nless otherwise provided in the
agreement to arbitrate." Ameriprise asserts that "[n]o
agreement between the Parties or stipulation in any document

17

presented in this arbitration provides for Brady to receive attorneys' fees."

M.G.L. c. 251, § 10 has been interpreted "to prohibit the award of attorney's fees in arbitration proceedings unless the parties have entered into an agreement authorizing the award of such fees." *Beacon Towers Condo. Tr.* v. *Alex*, 473 Mass. 472, 475, 42 N.E.3d 1144, 1147 (2016). The Massachusetts Supreme Judicial Court has recognized limited exceptions to this rule, including "where a party prevails on a statutory claim in which the statute mandates the recovery of attorney's fees by the prevailing party." *Id.* at 475 (citing *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664, 673, 761 N.E.2d 482, 489 (2002)).

As a threshold matter, I must observe that the First Circuit's position on the availability of "manifest disregard" for the law as an independent ground for vacatur derived from exceeding arbitral power appears unsettled. *See Mt. Valley Prop.* v. *Applied Risk Servs.*, 863 F.3d 90, 94-95 (1st Cir. 2017) ("[T]he Supreme Court, in *Hall Street Associates, LLC* v. *Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008), cast doubt on the continued existence of manifest disregard of the law as a ground for vacatur, and this court stated just this year that the doctrine remains 'only as a judicial gloss.' *Ortiz-Espinosa* v. *BEVA Sec. of P.R., Inc.*, 852 F.3d 36, 46 (1st Cir. 2017). Even so, this court has yet to decide whether

manifest disregard of the law remains as a ground for vacatur of arbitration awards . . . .").

According to the doctrine of manifest disregard of the law, an arbitration award may be vacated where the challenger shows "the award is (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." *Mt. Valley Prop.*, 863 F.3d at 95(quoting *McCarthy* v. *Citigroup Glob. Mkts., Inc.*, 463 F.3d 87, 91 (1st Cir. 2006)). An award is in manifest disregard of the law "if either 'the award is contrary to the plain language of the contract,' or 'it is clear from the record that the arbitrator recognized the applicable law, but ignored it.'" *Kashner Davidson Secs. Corp.* v. *Mscisz,* 531 F.3d 68, 74 (1st Cir. 2008) (quoting *Wonderland Greyhound Park, Inc.* v. *Autotote Sys., Inc.*, 274 F.3d 34, 36 (1st Cir. 2001)).

Brady contends that the Panel's award of attorney fees is properly analyzed under 9 U.S.C. § 10(a)(4) as an allegation that the arbitrators "exceeded their authority" in awarding attorney fees.  In order to determine if the arbitrators have exceeded their authority, courts "look to the parties' contract to determine the powers the parties intended to bestow upon the

arbitrator." *E. Seaboard Constr. Co.* v. *Gray Constr., Inc.*, 553 F.3d 1, 3-4 (1st Cir. 2008).

The issue of law presented by the arguably unsettled character of the manifest disregard doctrine need not be resolved directly here because under any conventional standard, whether this part of the award may stand turns on whether the arbitration agreement between the Parties contemplated attorney fees being paid to Brady. Since the award cites M.G.L. c. 251, § 10, it is clear that the Panel was aware of the law and believed it to be applicable. The issue then becomes whether the Panel exceeded its authority by manifestly disregarding the established statutory law of attorney fees as interpreted by the courts.

There are two sets of documents at issue here. One is Brady's Financial Advisor Agreement with Ameriprise. The other is the FINRA Arbitration Submission Agreements executed by the Parties. Brady does not challenge Ameriprise's view that the Financial Advisor Agreement does not provide for non-statutory attorney fees. That Agreement is clear in this regard: the Parties agreed that they are each "responsible for their own costs of legal representation, if any except where such costs of legal representation may be awarded as a statutory remedy by the arbitrator." Nor does Brady argue that the FINRA Arbitration Submission Agreement itself provides for attorney fees. Rather,

Brady argues for an alleged agreement consisting of the following:

> "(1) Brady filed her statement of claim in FINRA arbitration No. 16-93134 against Ameriprise and Noyes on October 26, 2016 and Brady requested her attorneys' fees payable by Ameriprise; (2) Ameriprise then filed its statement of claim in FINRA arbitration against Brady on November 17, 2016 and requested its attorneys' fees payable by Brady; (3) Both Parties signed two FINRA arbitration submission agreements at the same time agreeing to arbitrate all issues in those two respective arbitration claims."

There is a line of cases that hold parties may expand an arbitrator's authority beyond that provided by their written agreement. *See e.g., Univ. of Notre Dame (USA) in Eng.* v. *TJAC Waterloo, LLC*, 861 F.3d 287, 294 (1st Cir. 2017) (stating that "a party who does 'not reserve [an] issue' or contest the arbitrator's authority to decide it, but rather submits the issue to arbitration, 'cannot complain that the arbitrator [] reached it.'" (quoting *JCI Commc'ns, Inc.* v. *Int'l Bhd. of Elec. Workers*, 324 F.3d 42, 49 (1st Cir. 2003)).

Courts have found that when both parties submit a claim for attorney fees, this may reflect a shared intention to authorize an arbitrator to award such fees. For example, in *Miller* v. *Walker*, No. 02-17-00035-CV, 2018 WL 895602, at *4 (Tex. App. Feb. 15, 2018), a court found that the arbitrator did not exceed his power by awarding attorney fees where both sides submitted written requests for attorney fees, and signed a submission

agreement, in which they each agreed to submit the matters
contained in their pleadings to the arbitration panel.
Additionally, each party in *Miller* pursued the arbitral
proceeding without contesting whether such facts could be
awarded, including making additional submissions to prove up
their respective fee requests.   *Id.*

　　*Kaplan v. Shanahan*, 83 Mass. App. Ct. 1124, 985 N.E.2 413
(2013), which Brady has pressed as relevant in her submissions,
appears to be in this line of cases as well, although I note
that it is a summary decision issued by the Appeals Court
pursuant to Rule 1:28 and consequently may be cited only for
persuasive value, but not as binding precedent.

　　Nevertheless, I find this line of cases inapposite.  To be
sure, both parties submitted statements of claim including
attorney fees.  But they did so in two related, but factually
distinct, matters that were consolidated.  Significantly,
Ameriprise sought fees in relation to loans to Brady, whose
notes included a clause that allowed attorney fees for
Ameriprise.  For the duration of the proceeding, Ameriprise
disputed that an award for Brady's claim could include attorney
fees; Ameriprise asserted in its prehearing brief that the Panel
lacked the authority to award attorney fees in relation to the
claims brought by Brady.  Further, even if the award of attorney
fees were made pursuant to the agreement related to Ameriprise's

claim regarding the loans, the underlying agreement by terms
only permitted Ameriprise to recover.  I therefore find that no
agreement existed as to attorney fees for Brady's claims.

The lack of provision for attorney fees agreed to by the
Parties does not end the inquiry.  Brady argues that the Panel
had statutory authority to award attorney fees pursuant to an
exception to the general rule in M.G.L. c. 251, § 10.  Brady
points to the fact that one portion of her claim was made
pursuant to M.G.L. c. 93A § 11, an unfair competition and
consumer protection statute that allows attorney fees.  *Drywall
Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664, 673, 761 N.E.2d
482, 489 (2002) ("We conclude that the directive that a
prevailing party be awarded attorney fees under G.L. c. 93A, §
11, applies to arbitration awards of claims under § 11 despite
the normal unavailability of attorney fees in arbitration.  The
award of attorney fees is required by § 11, and therefore
overrides the effect of G.L. c. 251, § 10.")  Brady contends a
section of the arbitration award that references M.G.L. c. 93A §
11 is instructive.  This argument fails.  The arbitration award
clearly states that "Respondent Ameriprise Financial Services,
Inc. is liable for and shall pay to Claimant Cheryle Anne Brady
the sum of $123,712.00 in attorney fees pursuant to
Massachusetts G.L. Chapter 251, §10," not under M.G.L. c. 93A, §
11.

In any event, the Panel did not have authority to award attorney fees pursuant to M.G.L. c. 93A, § 11.  The Supreme Judicial Court of Massachusetts has made clear that § 11 covers "individuals acting in a business context in their dealings with other business persons..." and "does not provide a remedy for disputes arising out of an employer-employee relationship...." *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 719, 947 N.E.2d 520, 539 (2011) (quoting *Manning* v. *Zuckerman*, 388 Mass. 8, 10, 444 N.E.2d 1262, 1263 (1983)).  In her submissions, Brady appears to concede, as she must, that she had an employment relationship with Ameriprise, by stating she was "employed" by Ameriprise. The dispute presented to the Panel arose directly from the employer-employee relationship and the events that precipitated in June 2016, notwithstanding the fact Ameriprise published the U5 form after Brady was terminated.  Given the parties' employee-employer relationship, M.G.L. c. 93A, § 11 is inapplicable and did not provide authority to award Brady attorney fees.

In light of the above, I find that the award of attorney fees either exceeded the power of the Panel in violation of § 10(a)(4) and to that extent, if necessary, may be said to have been made in manifest disregard of the law.

4.   Fraud in Violation of 9 U.S.C. § 10(a)(1)

Ameriprise argues that the award should be vacated because it was based on perjured testimony by Brady.  As Ameriprise sees it, Brady repeatedly perjured herself by falsely stating to the Panel that she did not engage in unauthorized trading or exercise discretion in nondiscretionary accounts.  Because the award relied on this testimony, it continues, the award should be vacated.

Courts have been willing to vacate on the ground of fraud where there is clear and convincing evidence of fraud and where due diligence could not have discovered it prior to the arbitration.  *See, e.g., Odeon Capital Grp. LLC* v. *Ackerman*, 864 F.3d 191, 196 (2d Cir. 2017) ("A petitioner seeking to vacate an award on the ground of fraud must adequately plead that (1) respondent engaged in fraudulent activity; (2) even with the exercise of due diligence, petitioner could not have discovered the fraud prior to the award issuing; and (3) the fraud materially related to an issue in the arbitration."); *Morgan Keegan & Co.* v. *Garrett*, 495 F. App'x 443, 447 (5th Cir. 2012) ("Under Section 10(a)(1) of the FAA, 'a party who alleges that an arbitration award was procured by fraud must demonstrate: (1) that the fraud occurred by clear and convincing evidence; (2) that the fraud was not discoverable by due diligence before or during the arbitration hearing; and (3) the fraud materially

25

related to an issue in the arbitration.'" (quoting *Barahona* v.
*Dillard's, Inc.*, 376 Fed.Appx. 395, 397 (5th Cir. 2010)).
Ameriprise's claim meets none of those requirements.

Ameriprise offers no evidence that Brady perjured herself
beyond bare assertion.  Further, Brady's statements that she did
not direct the trades were made to Ameriprise before the
arbitration (thus, putting Ameriprise on notice).  In its
prehearing brief, Ameriprise emphasized that it did not credit
Brady's statements that she did not know of the trades when they
occurred by observing that "[w]hen Brady allegedly 'discovered'
the unauthorized trades, she did not have the trades reversed
and failed to report the trades to management."  It is apparent
the Panel resolved this factual dispute otherwise.

Ameriprise also asserts Brady perjured herself by
testifying at the hearing that she had never been accused of
unauthorized trading previously when there was evidence,
stemming from Brady's conduct at a previous employer in 2005, to
the contrary.  Ameriprise has failed to demonstrate by clear and
convincing evidence this historical matter was materially
related the pertinent issue before the Panel: whether Brady was
dismissed without cause for the events that transpired in 2016.

Given the lack of clear and convincing evidence for the
contention that fraudulent activity procured the arbitral award,
this is not a proper ground for vacatur.

## IV. CONCLUSION

For the foregoing reasons, I decline to vacate the arbitration panel's award as to all but the ground that the award of attorney fees exceeded the arbitrators' authority. Accordingly, I confirm the arbitration award bearing a January 23, 2018 date of service, except for that portion of the award that purports to award Brady attorney fees.[3]

*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

[3] In reviewing an arbitration award, a court "can confirm and/or vacate the award, either in whole or in part." *Scandinavian Reinsurance Co.* v. *Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (quoting *D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)).